UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
LIBERTY MUTUAL FIRE INSURANCE
COMPANY,

                Plaintiff,              **MEMORANDUM AND ORDER**

  -against-                       1:17-cv-2290(FB)(LB)

BRG SPORTS, INC., BELL SPORTS,
INC., and VISTA OUTDOOR,

                Defendants.
---------------------------------------------------x

*Appearances:*

| For the Plaintiff | For the Defendants |
|---|---|
| MARSHALL T. POTASHNER | JAMES C. UGHETTA |
| DAVID SHYER | JASON SCHMITZ |
| GLENN P. BERGER | Littleton Joyce Ughetta Park & Kelly LLP |
| Jaffe & Asher LLP | |
| 600 Third Avenue | 4 Manhattanville Road, Ste. 202 |
| New York, NY 10016 | Purchase, NY 10577 |

**BLOCK, Senior District Judge:**

      Plaintiff Liberty Mutual Fire Insurance Co. ("Liberty") brings this action as a subrogee of Bollinger Sports LLC ("Bollinger"), claiming breach of warranty and contractual indemnification. Defendants BRG Sports, Inc., Bell Sports, Inc., and Vista Outdoor (collectively, "defendants") move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing Liberty failed to state its claims and is barred from bringing them by an anti-assignment provision. Defendants' motion is denied.

# I

This lawsuit stems from a dispute over an April 9, 2012 Asset Purchase Agreement ("APA") between Bollinger and defendants.[1] Pursuant to the APA, Bollinger purchased a set of assets from Bell Sports, Inc. ("Bell Sports"), including the design of defendants' Embark Resistance Band (the "Embark Band") exercise equipment.[2] Bollinger then began selling its own product line (the "Bollinger Band") based on the design of the Embark Band.

On April 1, 2014, Bollinger was sued for products liability by a purchaser of the Bollinger Band, who claimed it malfunctioned and struck him in the eye (the "Underlying Action"). Bollinger then discovered that in 2011, the Embark Band had been recalled in cooperation with the Consumer Product Safety Commission

---

[1] The APA was signed by Bell Sports; plaintiff alleges that the other two defendant entities, BRG Sports, Inc. and Vista Outdoor, are its successors in interest.

[2] Defendants argue in passing that the Embark product line was excluded in the assets transferred by the APA. Paragraph 1.2(e) excludes "[t]hat portion of Seller's Fitness Business represented by its account with Target for its Embark . . . product[]." APA ¶ 1.2(e). Liberty alleges this excludes the trade name "Embark" but that the underlying product design for the band was sold as part of the Fitness Business. "On a motion to dismiss, the Court . . . must resolve all ambiguities in the contract in [the plaintiff's] favor." *Serdarevic v. Centex Homes, LLC*, 760 F. Supp. 2d 322, 328 (S.D.N.Y. 2010). The phrase "represented by its account with Target for its Embark ... product" is ambiguous as applied to the disputed product design. APA ¶ 1.3(e). Therefore, it is inappropriate for resolution on a 12(b)(6) motion.

("CPSC") for the same defect. Bell Sports did not disclose this recall or product defect to Bollinger when it entered into the APA.

Liberty, who insured Bollinger for the relevant time period, stepped into Bollinger's shoes and defended the Underlying Action as Bollinger's subrogee. Liberty settled the Underlying Action for $650,000 and incurred $155,000 in costs for the defense. Liberty then brought the present action, again as Bollinger's subrogee, against defendants to recover this money.

## II

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive, the complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The parties agree that Texas substantive law controls under the APA's choice of law provision.

### A.     Express Negligence

First, defendants argue that Texas's "express negligence test" bars Liberty's

3

claims. Under this test, a party that seeks "to indemnify the indemnitee from the consequences of its own negligence must express that intent in specific terms." *Ethyl Corp. v. Daniel Construction Co.*, 725 S.W.2d 705, 708-09 (Tex. 1987). Defendants argue that what Liberty is seeking is indemnification for Bollinger's negligence in selling the defective exercise band.

This argument mischaracterizes Liberty's complaint. Liberty claims that defendants should indemnify it for Bell Sports's failure to disclose the design flaws and recall, not Bollinger's own negligence in selling the product. Therefore, the express negligence test does not apply.[3]

*Man GHH Logistics GMBH v. Emscor, Inc.*, 858 S.W.2d 41 (Tex. App. 1993) is not to the contrary. The court there held that the "express negligence rule [did] *not* apply . . . because appellants [were] not seeking to recover for their own negligence." 858 S.W.2d at 43 (emphasis added).[4] The same is true here.

The contract expressly provides indemnification for this scenario under two provisions: paragraphs 3.3(a) and 3.3(c) which provide, "Seller shall indemnify,

---

[3] To the extent defendants argue that, as a factual matter, Bollinger's negligence caused the accident and lawsuit and not Bell Sports's, such argument goes to the merits and is not appropriate for resolution on a 12(b)(6) motion.

[4] Instead, the court affirmed the district court's dismissal on summary judgment because appellants sought contribution, which the contract did not provide. *Man GHH Logistics*, 858 S.W.2d at 43. Here, Liberty is seeking indemnification, not contribution.

defend and hold harmless Purchaser from and against any and all damages, arising out of, relating to or resulting from: (a) Any breach of a representation or warranty of Seller contained in this Agreement . . . and (c) Any Excluded Asset or Excluded Liability." APA ¶ 3.3(a), (c).

Liberty alleges that the Underlying Action stems from Bell Sports's failure to disclose the Embark Band's design defect and recall. This is a breach of warranty and is indemnified by APA ¶ 3.3(a). Liberty further alleges that the Underlying Action is covered by the definition of Excluded Liability, which includes, "[a]ny legal proceeding initiated at any time (whether before, on, or after the Closing Date), to the extent related to any action or omission on or prior to the Closing Date including . . . any liability for . . . (ii) breach of product warranties; or (iii) injury . . . caused by Seller's products[.]" APA ¶ 1.4(e). The Underlying Action fits this definition: It was a legal proceeding claiming breach of product warranty "related to" both defendants' failure to notify Bollinger of the design defect and an injury caused by the Embark Band. Therefore, it fits the definition of "Excluded Liability" and is indemnified by APA ¶ 3.3(c).

Either of Liberty's theories suffices to state an indemnification claim, and neither seek indemnification for Bollinger's own negligence.[5]

---

[5] Defendants' related argument that settlement bars indemnification fails. "Under Texas law, where an indemnitee enters into a settlement with a third party, it may recover from the indemnitor . . . upon a showing that potential liability

5

B. **Breach of Warranty**

Defendants next argue that Liberty has not alleged facts showing Bell Sports breached any specific warranty made in the contract. In order to recover for the breach of an express warranty, a plaintiff must prove, *inter alia*, both "an express affirmation of fact or promise by the seller relating to the goods" and "that such affirmation of fact or promise became a part of the basis of the bargain." *Great Am. Prods. v. Permabond Int'l*, 94 S.W.3d 675, 681 (Ct. App. Tex. 2002).

The APA warranted that Bell Sports had "complied with all applicable laws, rules and regulations . . . ." APA ¶ 3.1(f). The product recall was related to a design defect that made the product design illegal to sell, and, therefore, Bell Sports violated products liability tort law by selling it. It did not disclose this violation in the APA. Furthermore, without discovery, Liberty has no assurances that Bell Sports complied with any terms set forth by the CPSC in conjunction with the product recall. Therefore, Liberty has alleged a specific warranty that Bell Sports breached in failing to disclose the product recall or the CPSC's involvement.[6]

---

existed, and that the settlement was reasonable, prudent, and in good faith under the circumstances." *Ins. Co. of N. Am. v. Aberdeen Ins. Servs., Inc.*, 253 F.3d 878, 888 (5th Cir. 2001).

[6] Whether, as Liberty alleges, other warranties were breached in relation to the product recall can be established by discovery.

## C.   Anti-Assignment Provision

Finally, defendants argue that the APA's anti-assignment provision bars Liberty from entering the lawsuit as Bollinger's subrogee. APA ¶ 6.1.

It is "the longstanding principle of Texas courts to 'recognize the [subrogation] doctrine . . . to its fullest extent." *Associated Int'l Ins. Co. v. Scottsdale Ins. Co.*, 862 F.3d 508, 510 (5th Cir. 2011) (quoting *Frymire Eng'g Co. ex rel. Liberty Mut. Ins. v. Jomar Int'l, Ltd.*, 259 S.W.3d 140, 141 (Tex. 2008)); *see also Faires v. Cockrill*, 88 Tex. 428, 437 (1895) ("Perhaps the courts of no state have gone further [than Texas] in applying the doctrine of subrogation").

Texas law recognizes two primary types of subrogation: equitable and contractual. *Continental Cas. Co. v. N. Am. Capacity Ins. Co.*, 683 F.3d 79, 85 (5th Cir. 2012). "Equitable subrogation 'arises in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter.'" *Id.* (quoting *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 774 (Tex. 2007)). "Contractual subrogation, on the other hand, 'is created by an agreement or contract that grants the right to pursue reimbursement from a third party in exchange for payment of a loss.'" *Id.* (quoting *Mid-Continent*, 236 S.W.3d at 774).

In *Frymire Engineering*, the Texas Supreme Court held plaintiff had standing to pursue a claim under equitable subrogation even though defendant argued that plaintiff

was "using equitable subrogation as a cloak to seek . . . an assignment of the [third party's] claims against [defendant] under circumstances under which Texas law prohibits . . . assignment." 259 S.W.3d at 146. The Court held that "equitable subrogation confers standing on a party, opening the courthouse door and allowing the subrogated party to pursue otherwise unavailable claims." *Id.* at 146-47. Thus, equitable subrogation is distinct from assignment under Texas law and available even where assignment is barred. *Cf. United States v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 374 (1949) (federal Anti-Assignment Act, 31 U.S.C.A. § 203, does not apply to claims subrogated "by operation of law"); *St. Paul & Marine Ins. v. State Volunteer Mut. Ins. Co.*, 2000 WL 423419, at *2 (5th Cir. Apr. 5, 2000) (anti-assignment contract clause does not bar equitable subrogation under Mississippi law).

Here, Liberty is pursuing its claims under a theory of subrogation. They were not contractually assigned. Therefore, they are not barred by the anti-assignment clause.

### III

Defendants' motion to dismiss is denied in its entirety.

**SO ORDERED**

    /S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
June 21, 2018